# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 19-360V**
UNPUBLISHED

|  |  |
|---|---|
| SUSAN LEONE | Chief Special Master Corcoran |
| Petitioner, | Filed: August 20, 2024 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leah V. Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On March 11, 2019, Susan Leone filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of an influenza ("flu") vaccine received on September 12, 2017. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement, the parties could not agree on damages, so the disputed issues were submitted to SPU Motions Day.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to **$207,000.00** for actual pain and suffering.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Procedural Overview

As noted above, the case was filed on March 11, 2019. On April 10, 2020, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. (ECF No. 24). Accordingly, on April 13, 2020, a ruling on entitlement issued in Petitioner's favor. (ECF No. 25).

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set on March 1, 2022. (ECF No. 50). Petitioner filed her brief on March 31, 2022, requesting that I award her $228,121.23 in compensation - representing $225,000.00 for past pain and suffering and $3,121.23 for lost wages. (ECF No. 52). Conversely, in a brief filed on May 24, 2022, Respondent argued that Petitioner should be awarded only $160,000.00 for past pain and suffering and $0.00 in lost wages. (ECF No. 54). Petitioner filed a Reply brief on June 22, 2022. (ECF No. 56). After considering the briefings, I filed an order on September 6, 2023, requesting supplemental briefing on the issue of lost wages. (ECF No. 58). Petitioner filed her supplemental brief on October 6, 2023, and Respondent filed his supplemental response on November 8, 2023.

On July 15, 2024, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. (ECF No. 62). The parties agreed, and an expedited hearing took place on August 9, 2024. Minute Entry dated August 9, 2024.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

## II.    Pain and Suffering

### A.  Legal Standard and Prior SIRVA Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Winkle v. Sec'y Health & Hum. Servs.*, No. 20-0485V, 2022 WL 221643, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 11, 2022).

---

[3] Mr. Mike Milmoe appeared on behalf of Petitioner, and Ms. Shelly Jock appeared on behalf of Respondent. The transcript of the August 9, 2024, hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

## B. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Ms. Leone's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on August 9, 20224. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

For the reasons discussed below, and pursuant to my oral ruling on February 18, 2022 (which is fully adopted herein), I find that $207,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering. There are several related bases for my decision.

The record establishes that Petitioner's shoulder pain has been moderate-to-severe for several years. Petitioner first presented to Dr. Edward Savarese for shoulder pain approximately one month after the initial vaccination. Ex. 7 at 3. She was diagnosed with tendinitis and bursitis and was given a steroid injection in her left shoulder, and was referred to physical therapy ("PT"). *Id.* at 4. Petitioner began PT on October 23, 2017, reporting pain levels of 7 out of 10. After two PT sessions, Petitioner was forced to quit due to her pain levels and she returned to Dr. Savarese on October 27, 2017, where she was advised to stop PT and treat her shoulder with nonsteroidal anti-inflammatories. Ex. 7 at 6.

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

On January 8, 2018, Petitioner presented to orthopedic surgeon Dr. Eric Strauss complaining of "left shoulder pain, limited ROM and weakness." Ex. 5 at 22. Dr. Strauss recommended a left shoulder arthroscopy, which was performed on April 10, 2018, approximately seven months after the initial vaccination. *Id.* at 30. Petitioner began PT following her surgery on April 17, 2018, and during the initial evaluation she reported pain levels of 10 out of 10. Ex. 3 at 5. She was assigned PT twice a week for six weeks along with a home exercise program ("HEP"). *Id.* Between June 18, 2018, and November 26, 2018, Petitioner underwent PT and periodically visited Dr. Strauss for re-evaluations of her shoulder – during this time, Petitioner continually expressed she was experiencing pain and limited range of motion which was preventing her from returning to work. Ex. 11 at 10. Ultimately, between April 17, 2018, and January 21, 2019, Petitioner attended 78 PT sessions, with pain levels of 5 out of 10 being reported on her final session. Ex. 3, at 199.

Petitioner returned to see Dr. Strauss on February 25, 2019, and his examination revealed decreased range of motion and tenderness in her left shoulder. Ex. 11 at 2. Petitioner at that time expressed that she would like to schedule a second surgery as soon as possible for her shoulder given that her extensive PT did little to help improve her left shoulder. *Id.*

Petitioner underwent a second surgery on May 16, 2019, which included a left shoulder arthroscopy, labral debridement, subacromial decompression and bursectomy, and an open biceps debridement. Ex. 14, at 1. Following this second surgery, Petitioner attended 23 PT sessions between May 22, 2019, and August 14, 2019. Ex. 15. At the time she was discharged, Petitioner still reported a typical pain level of 5 out of 10, with maximum pain at 6 out of 10. *Id.* at 9.

Over a year after her last PT session, Petitioner visited Dr. Strauss on September 11, 2020, for a follow-up appointment to evaluate her left shoulder. Ex. 16 at 1. At this time Petitioner indicated that she was experiencing improvement in how her shoulder felt and Dr. Strauss advised her that she could resume all activities on an as-tolerated basis. *Id.* at 2. However, on January 6, 2021, Petitioner returned to Dr. Strauss complaining of left shoulder pain and that her previous symptoms had returned without a specific triggering event. Ex. 16 at 4. At this time, Petitioner underwent a third MRI of her shoulder. *Id.* On May 5, 2021, Petitioner received a steroid injection from Dr. Strauss after reporting pain of 6 out of 10. Ex. 17 at 1-3. The possibility of a third surgery was also discussed. Most recently, Petitioner saw Dr. Strauss in November of 2023. At this time, she reported pain levels of 4-5 out of 10 but at that time the possibility of a third surgery had been ruled out. Petitioner did undergo a fourth MRI in October of 2023 which showed "low grade partial thickness RTC tear and some associated mild bursitis" but was overall stable compared to her last MRI from 2021. Ex. 20.

Based upon all of the above, Petitioner has demonstrated entitlement to a substantial award for pain and suffering award, and one higher than what has been recommended by Respondent. Petitioner ultimately has required two shoulder surgeries, over 100 PT sessions, four MRIs, and two steroid injections. However, the requested $225,000.00 sum is slightly excessive.[5]

Petitioner has cited to a plethora of cases which all provide good comparable points to the instant case – they include *Schoonover v. Sec'y of Health & Hum. Servs.*, No. 16-1324V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Augt. 5, 2020) (awarding $200,000.00 in actual pain and suffering and $39,600.00 for future pain and suffering); *Lawson v. Sec'y of Health & Hum. Servs.*, No. 18-882V, 2021 WL 688560 (Fed. Cl. Spec. Mstr. Jan. 5, 2021) (awarding $205,000.00 in pain and suffering); *McDorman v. Sec'y of Health & Hum. Servs.*, No. 19-814V, 2021 WL 5504698 (Fed. Cl. Spec. Mstr. Oct. 18, 2021) (awarding $200,000.00 in pain and suffering); *Elmakky v. Sec'y of Health & Hum. Servs.*, No. 17-2032V, 2021 WL 6285619 (Fed. Cl. Spec. Mstr. Dec. 3, 2021) (awarding $205,000.00 in pain and suffering); and *M.W. v. Sec'y of Health & Hum. Servs.*, No. 18-267V, 2021 WL 3618177 (Fed. Cl. Spec. Mstr. Mar. 17, 2021) (awarding $195,000.00 in pain and suffering).

These cases provide a reasonable range out outcomes pertaining to the instant case, with *Lawson* perhaps providing the most guidance. The *Lawson* petitioner underwent a slightly more aggressive course of treatment (3 surgeries, 7 steroid injections, 6 MRIs, and four separate rounds of PT) than Ms. Leone. However, the record in *Lawson* also reflected that the petitioner was able to enjoy some periods of time with relief from pain, with the course of her pain more intermittent than that of Ms. Leone. 2021 WL 688560, at *6. Additionally, the record provided some ambiguity over whether Ms. Lawson's third surgery was related to her initial SIRVA or something else. *Id.*

Here, Petitioner reported near-constant pain levels of 5-6 out of 10 with a peak of 10 out of 10 immediately following her second surgery. At best, it can be said that Petitioner's symptoms abated somewhat following a year of PT and home exercise following that second surgery before returning in January 2021 and persisting to this day. Additionally, the necessity for a third surgery was at least contemplated by Petitioner's treating physician. Due to the length of Petitioner's injury and the consistently reported moderate-to-severe pain levels reported, the instant case appears to present a slightly

---

[5] I acknowledge that prior pain and suffering determinations are not binding on this decision. *See Nance v. Sec'y of Health & Human Servs.*, No. 06–730V, 2010 WL 3291896 at *8 (Fed. Cl. Spec. Mstr. July 30, 2010); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."). These cases, however, provide persuasive guidance herein.

more severe injury than that in *Lawson*, thus resulting in a higher award. However, none of the cases cited to by Petitioner support her requested amount of $225,000.00, as Ms. Leone's injury is not unambiguously far more severe than any of those in the aforementioned cases.

Respondent has unhelpfully not offered *any* cases as comparable to support his proposed award of $160,000.00. Instead, he simply attempts to distinguish the instant case from those cited as comparable cases by Petitioner. The crux of his argument is that Ms. Leone's shoulder issues resolved in approximately two years, and thus her case is shorter and less severe than any of the aforementioned cases. But the record clearly reflects that Petitioner's shoulder issues did not resolve in two years. At best, it can be said that Petitioner saw the most improvement around September 2021, when she reported that she felt her shoulder was finally improving. This is distinct from Petitioner ever indicating that her shoulder issues had resolved completely. At best, it appears that Petitioner was able to enjoy a period with mild pain less than 5 out of 10 for several months, but it does not appear that her symptoms ever completely abated.

Overall, I find that an award slightly higher than what the *Lawson* petitioner was awarded to be merited in the instant case. Therefore, Petitioner is awarded $207,000.00 for actual pain and suffering.

### III.     Appropriate Compensation for Lost Wages

Petitioner has requested reimbursement for lost wages in the amount of $3,121.23. This is related to two pay periods in late July/early August 2019 where Petitioner's injury forced her to miss work and as a result she received reduced pay for those two pay periods. Petitioner calculated her lost wages amount by starting with her typical gross biweekly pay of $4,901.34 and subtracting the amount she actually received for those two pay periods ($2,982.95 and $3,698.50 respectively). Pet.'s Supp. Brief at 2. Respondent countered that Petitioner is not entitled to any reimbursement for lost wages because the record indicates that some of Petitioner's costs were handled under workers compensation and therefore the wage discrepancy should also have been handled under workers' compensation. Resp.'s Supp. Brief at 2. Respondent also objects to the actual calculation of lost wages because simply comparing the difference in gross pay does not account of the increase in offsets from FICA tax, state, and federal taxes properly. *Id.* at 3-4.

When I ordered supplemental briefing on lost wages, I specifically indicated that when providing additional evidence to support her claim, Petitioner should establish whether she received any award from workers' compensation for lost wages, and if she did not, provide an explanation regarding why her lost wage claim was not paid by

workers' compensation. Order, issued September 6, 2023, at 2. No such information was provided by Petitioner. I asked Petitioner's counsel at the oral argument whether he was aware of any evidence that Petitioner's lost wages had been covered by workers' compensation or that Petitioner had made such a claim, but these questions could not be answered. Petitioner has had ample opportunity to adequately substantiate her claim for lost wages but ultimately she has failed to do so. Therefore, Petitioner's claim for lost wages is denied.

### Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $207,000.00, representing reimbursement for actual pain and suffering.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.